1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7    REBECCA LAVELLE,

8                              Plaintiff,          NO. 2:21-CV-0170-TOR

9         v.                                       ORDER GRANTING IN PART AND
                                                   DENYING IN PART DEFENDANTS'
10   CL WEST MANAGEMENT LLC,                       MOTION FOR SUMMARY
     INC.; WESTMONT HOSPITALITY                    JUDGMENT
11   GROUP EXTENDED STAY; WHG,
     LLC; REDROOF, INC.; and
12   HOMETOWNE STUDIOS, LLC,

13                             Defendants.

14        BEFORE THE COURT are Defendants' Motion for Summary Judgment

15   (ECF No. 58), Motion for Sanctions or for Second Order to Compel (ECF No. 75),

16   Motion to Expedite Motion to Strike Untimely Response (ECF No. 92), and

17   Motion to Strike Response to Motion (ECF No. 94).  These matters were submitted

18   for consideration without oral argument.  The Court has reviewed the record and

19   files herein, and is fully informed.  For the reasons discussed below, Defendants'

20   Motion for Summary Judgment (ECF No. 58) is **granted in part** and **denied in**

**part**, Defendants' Motion for Sanctions or for Second Order to Compel (ECF No. 75) is **granted in part** and **denied in part**, Defendants' Motion to Expedite Motion to Strike Untimely Response (ECF No. 92) is **denied as moot**, and Defendants' Motion to Strike Response to Motion (ECF No. 94) is **denied**.

## BACKGROUND

This case arises out of Plaintiff's employment with Hometowne Studios, a hotel, in Spokane Valley, Washington. ECF No. 9 at 3. On February 24, 2021, Plaintiff filed her original complaint against Defendants. ECF No. 1. Plaintiff is proceeding *pro se* and *in forma pauperis* under 28 U.S.C. § 1915. ECF No. 7. That same day, Plaintiff filed her amended complaint. ECF No. 9.

On August 2, 2021, the Court dismissed Plaintiff's amended complaint in part, finding Plaintiff's Age Discrimination Employment Act ("ADEA") claims for discrimination and retaliation against Defendant CL West Management LLC were adequately pled but dismissed Plaintiff's Title VII, Fair Labor Standards Act ("FLSA"), Equal Pay Act ("EPA"), and Washington's EPA claims without prejudice. ECF No. 11. The Court also denied Plaintiff's motion for appointment of *pro bono* counsel and allowed Plaintiff to file a second amended complaint within 60 days of the order. *Id.* On October 6, 2021, Plaintiff filed her second amended complaint with exhibits. ECF Nos. 15-16.

On December 20, 2021, the Court granted in part and denied in part Defendant CL West Management LLC's motion to dismiss, dismissing Plaintiff's Family Medical Leave Act ("FMLA"), Fair Labor Standards Act ("FLSA"), and EPA claims without prejudice and with leave to amend.  ECF No. 32.

On February 23, 2022, Plaintiff filed the currently operative third amended complaint.  ECF No. 41.  Plaintiff raises the following claims against Defendants CL West Management LLC, Westmont Hospitality Group Extended Stay, LLC WHG, LLC, Red Roof, Inc., and Hometowne Studios, LLC, Red Roof, Inc. for violations of the ADEA, Title VII, EPA, FLSA, False Claims Act ("FCA"), Title VIII, and Washington's Law Against Discrimination ("WLAD").  ECF No. 41.  Plaintiff received her right to sue letter from the Equal Employment Opportunity Commission.  ECF No. 19 at 2.

On July 25, 2022, Defendants filed the present motion for summary judgment on all of Plaintiff's claims but the WLAD.  ECF No. 58.  Defendants also presented Plaintiff with notice of the summary judgment ruler requirements. ECF No. 61.  The parties timely filed their respective response and reply.  ECF Nos. 69, 84.  The Court granted Plaintiff's motion for leave to file a surreply.  ECF Nos. 91, 98.  Additionally, Defendants filed a motion for sanctions or for a second order to compel, and moved to strike Plaintiff's untimely response.  ECF Nos. 75, 94.  Except where noted, the following facts are not in dispute.

**FACTS**

On May 15, 2019, Plaintiff applied to a position at HomeTowne Studios, owned by CL West Management, LLC, in Spokane Washington.  ECF No. 58 at 2.  On May 22, 2019, Plaintiff was offered a position as a Maintenance Technician and began work the same day.  *Id.* at 2-3.  Plaintiff's starting wage was $14.50 per hours, and was later raised to $14.94 per hour.  *Id.* at 3.  Plaintiff was initially supervised by Joshua Hendricks.  *Id.*

In October 2019, Plaintiff applied for the General Manager position (Mr. Hendrick's position), but was not selected.  *Id.*  Gary Sawyer was selected for the position and began on November 2019.  *Id.*

At the end of 2019, Plaintiff overheard Mr. Sawyer use the phrase "God damn."  *Id.*  Plaintiff confronted Mr. Sawyer about this, to which he stated "I hate God."  *Id.*  Around the same time, Mr. Sawyer brought up God and said he turned his back on becoming a pastor.  *Id.*  Plaintiff believes the owners of Westmont Hospitality are "extremely strong Muslims" that terminated her for her Christian beliefs.  *Id.*  Plaintiff also overheard Mr. Sawyer call her "Ole' girl."  *Id.*  Plaintiff disputes that Mr. Sawyer stated this only once, relying on a text message from a coworker acknowledging she heard Mr. Sawyer call Plaintiff "'Ol Girl."  ECF No. 70 at 2, ¶¶ 2 (citing ECF No. 9-1 at 105).  Plaintiff also contends Mr. Sawyer would scream at her and was generally aggressive.  ECF No. 58 at 3.

On December 20, 2019, Plaintiff was given her first written warning. *Id.* at 4. On January 12, 2020, Mr. Sawyer documented Plaintiff again, stating he "witnessed [Plaintiff] using the GMs computer to apply for jobs outside the company while clocked in which is saved in the history of the computer. [Plaintiff] also was utilizing the same computer that night after [she] had clocked out for the day for the same purpose." *Id.* On January 14, 2020, Plaintiff was documented because she "failed to complete the task of replacing trash bags in all containers leading to severe mess." *Id.* Plaintiff testified she did so to two bins for safety precautions. *Id.* On January 15, 2020, Plaintiff was documented for failing to arrive to work on time. *Id.* Plaintiff disputes this, stating she was at work early but was not on the job because she was cleaning her son's room and was "doing the housekeepers a favor." *Id.*; ECF No. 70 at 7, ¶ 28.

On January 16, 2020, Plaintiff was counseled as Mr. Sawyer "was informed by a tenant that let [him] know that [she had] been making several unwanted advances toward them and wanted this to end." ECF No. 58 at 4. Plaintiff acknowledges a complaint was made, but asserts the complaint was false and the person recanted after Plaintiff's termination. *Id.*

On January 22, 2020, Plaintiff was documented as she "called and Text at 9:59am one minute prior to [her] 10:00 start time and stated that [she] had to find a new place to live. Per our discussion on 1/19/2020 you understood any tardiness

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 5

would result in a termination.  You did not follow the expectations given on the final write up and it is now a termination." *Id.*  Plaintiff does not dispute that she was in fact tardy and did not provide prior notice. *Id.* at 5.  On January 26, 2020, Plaintiff was terminated.

Plaintiff asserts she worked every Sunday in overtime without pay, despite all overtime requiring manager approval. *Id.* at 5.  Plaintiff was not scheduled to work on Sundays, was not requested to work on Sundays, did not clock in, nor did she notify anyone she worked on Sundays. *Id.*  Defendants assert Plaintiff was paid for all time in which she clocked-in and was schedule, and was paid overtime when she worked in excess of 40 hours per workweek. *Id.*  Plaintiff disputes overtime was paid on the grounds Defendants regularly changed the hours she worked.  ECF No. 70 at 4, ¶ 9.  Plaintiff further disputes the overtime allegations on the grounds that she was asked to work overtime and was often on call for maintenance issues. *Id.*, ¶ 10.

## DISCUSSION

## I.    Admissible Evidence

As a threshold matter, Defendants object and move to strike Plaintiff's evidence submitted in response to summary judgment on the grounds that documents are hearsay and/or were illegally obtained.  ECF Nos. 84.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 6

Hearsay is an out of court statement used to prove the truth of the matter asserted that is not subject to any exception.  *See* Fed. R. Evid. 801, 802.  A court may consider inadmissible hearsay evidence on a motion for summary judgment so long as the underlying evidence may be provided in an admissible form at trial.  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). However, the Court may use its equitable powers to exclude evidence that is wrongfully obtained outside of the discovery process.  *See Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324-27 (S.D.N.Y. 1997).

Here, Defendants object to an unsigned declaration, text messages on the grounds of hearsay, and Defendants' business records on the grounds that Plaintiff did not request through the course of discovery.  Plaintiff submitted a corrected signed declaration, the text message testimony could be presented as admissible testimony in the form of live testimony at trial, and their evidence does not establish that the business records were wrongfully obtained at this time. Therefore, the Court will consider all the relevant evidence in the record.

## II.    Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

1    evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

2    party moving for summary judgment bears the initial burden of showing the

3    absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

4    317, 323 (1986).  The burden then shifts to the non-moving party to identify

5    specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

6    *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

7    of evidence in support of the plaintiff's position will be insufficient; there must be

8    evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

9         For purposes of summary judgment, a fact is "material" if it might affect the

10   outcome of the suit under the governing law.  *Id*. at 248.  Further, a dispute is

11   "genuine" only where the evidence is such that a reasonable jury could find in

12   favor of the non-moving party.  *Id*.  The Court views the facts, and all rational

13   inferences therefrom, in the light most favorable to the non-moving party.  *Scott v.*

14   *Harris*, 550 U.S. 372, 378 (2007).  Summary judgment will thus be granted

15   "against a party who fails to make a showing sufficient to establish the existence of

16   an element essential to that party's case, and on which that party will bear the

17   burden of proof at trial."  *Celotex*, 477 U.S. at 322.  While a *pro se* litigant's

18   allegations are to be liberally construed, non-prisoner "*pro se* litigants in the

19   ordinary civil case should not be treated more favorably than parties with attorneys

20   of record."  *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 8

1    *1. ADEA*

2        Defendants move for summary judgment on Plaintiff's age discrimination

3    claim.  ECF No. 58.

4        To state a claim of discrimination under the ADEA, a plaintiff must show

5    that (1) she was at least forty years old, (2) she was performing her job

6    satisfactorily, (3) she was discharged, and (4), either replaced by substantially

7    younger employees with equal or inferior qualifications or discharged under

8    circumstances otherwise giving rise to an inference of age discrimination.  *Diaz v.*

9    *Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  If satisfied, the

10   burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason

11   for the adverse employment action."  *Becka v. APCOA/Standard Parking*, 146 F.

12   Supp. 2d 1109, 111 (C.D. Cal.).  If satisfied, the burden shifts back to the plaintiff

13   to show "pretext" for the age discrimination.  *Id.*

14       Here, Plaintiff is 55 years old, and was over the age of 40 at the time of the

15   events.  ECF No. 58 at 9.  Plaintiff asserts she was performing her job

16   satisfactorily, she was discharged, and was replaced by a substantially younger

17   male employee who was paid more.  ECF Nos. 69, 70.  Therefore, Plaintiff has

18   made a *prima facie* case of age discrimination and the burden shifts to Defendant

19   to demonstrate a legitimate, nondiscriminatory reason for the adverse employment

20   action.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 9

1    Defendants dispute Plaintiff was performing her job satisfactorily on the

2    grounds she received multiple write ups for using company resources for a

3    personal job search, failed to replace all trash bags in the garbage cans, failed to

4    arrive at work on time, was reported for making unwanted advances towards a

5    guest, and called out for work one minute before her shift began after being warned

6    that further lateness would not be tolerated.  ECF No. 58 at 9.  These violations of

7    Defendants' policies are legitimate, nondiscriminatory reasons for discipline and

8    termination.  Therefore, the burden shifts back to Plaintiff to show pretext.

9    Plaintiff asserts she was performing her job satisfactorily in other areas, she

10    provided "affirmative defenses regarding the use of the computer" ("why would he

11    just watch someone use him computer without permission … Affirmative defense

12    was the development of the bar code system and inquiring about jobs available

13    within [sic] the company."), the garbage cans were being cleaned because "public

14    policy demands cleanliness" and "it was the responsibility of the person to finish

15    the process", and the "unwanted advances" allegation has since been recanted.

16    ECF Nos. 69 at 7, 70 at 7, ¶¶ 24, 26, 98-1.  Additionally, while Plaintiff does not

17    dispute she was late at times, she asserts Mr. Sawyer did not discipline other

18    employees who were late, she was there but would not clock in, and she would be

19    doing housekeeping matters not within the scope of her job.  ECF Nos. 69 at 3, ¶

20    15, 70 at 7, ¶ 28.  Plaintiff produced a declaration of another former employee who

1   stated she was late almost every day but rather than disciplining her, Mr. Sawyer

2   changed her hours.  ECF No. 98-1.  Plaintiff provided evidence to create a genuine

3   issue of material fact as to whether Defendants' reasons for Plaintiff's discharge

4   was pretext for age discrimination.  Therefore, summary judgment on this claim is

5   not appropriate.

6       *2.  Title VII*

7       Defendants move for summary judgment on Plaintiff's Title VII claims for

8   gender and religious discrimination.  ECF No. 58 at 11-15.

9       Title VII prohibits unlawful employment practices for an employer to

10  "discriminate against any individual with respect to his compensation, terms,

11  conditions, or privileges of employment, because of such individual's race, color,

12  religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The plaintiff must

13  show (1) the employer engaged in discriminatory conduct, (2) the conduct was

14  severe and pervasive as to affect the terms, conditions, or privileges of

15  employment, and (3) the conduct was because of the employee's protected status.

16  *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1174 (9th Cir. 2017).  In evaluating

17  whether conduct is severe or pervasive, courts look at "all the circumstances,

18  including the frequency of the discriminatory conduct; its severity; whether it is

19  physically threatening or humiliating, or a mere offensive utterance; and whether it

20  unreasonably interferes with an employee's work performance."  *Clark Cty. Sch.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 11

1   *Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (internal quotation marks and

2   citation omitted).

3          a.   Gender Discrimination

4          Plaintiff alleges Mr. Sawyer called Plaintiff "'Ol Girl" on at least one

5   occasion such that coworkers knew Mr. Sawyer was referring to Plaintiff and that

6   coworker stated he had a problem with Plaintiff being female power washing the

7   sidewalk and asked Plaintiff "Where should we put your body?"  ECF No. 58 at

8   12.  While offensive, these occasional statements do not rise to the level of severity

9   to rise a genuine issue of material fact as to a Title VII violation that interferes

10  unreasonably with Plaintiff's employment.  *See Kortan v. California Youth Auth.*,

11  217 F.3d 1104, 1110 (9th Cir. 2000) (finding offensive statements such as

12  "castrating bitch", "madonna", or "regina" made on several occasions not severe or

13  pervasive enough to unreasonably interfere with the plaintiff's employment).

14  Therefore, summary judgment on this claim is appropriate.

15         b.   Religious Discrimination

16         Plaintiff alleges Mr. Sawyer used the phrase "God damn", "I hate God", and

17  responded to Plaintiff's questioning about God.  ECF No. 58 at 14.  Plaintiff also

18  alleges the owners of Westmont Hospitality are Muslims who do not prefer

19  Christian employees and instructed employees to remove Bibles from the hotel

20  rooms.  ECF Nos. 58, 69.  Like the statements concerning gender discrimination,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 12

Mr. Sawyer's one-off statements does not rise to the level of severe or pervasive. *See Cohen-Breen v. Gray Television Grp., Inc.*, 661 F. Supp. 2d 1158, 1163, 1167 (D. Nev. 2009) (finding non-threatening statements regarding religion did not amount to severe and pervasive harassment).  There are no genuine issues of material fact as to whether Mr. Sawyer's conduct or the Westmont Hospitality owners' religion in any way interfered with Plaintiff's work performance. Therefore, summary judgment is appropriate.

### 3.  *FLSA*

Defendants move for summary judgment on Plaintiff's FLSA overtime and minimum wage claims.  ECF No. 58 at 16.

#### a.  Overtime

The FLSA requires employers to pay overtime pay where an employee works over 40 hours in a given workweek.  29 U.S.C. § 207.  "[A]t a minimum, a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week."  *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), *as amended* (Jan. 26, 2015).

As to the overtime allegations, Defendants assert Plaintiff was paid for all overtime hours and submitted Plaintiff's timesheets.  ECF No. 58 at 16.  While Defendants assert "[a]ll of Plaintiff's paystubs demonstrate that she was paid

overtime when overtime was worked", ECF No. 58 at 16, Plaintiff's timesheets show two-week pay periods with hours worked in excess of 80 hours that were compensated with 0 overtime hours. *See, e.g.*, ECF No. 58 at 6 ("For the pay period of October 16, 2019, to October 31, 2019, Plaintiff was paid no overtime, but 102.50 regular hours. Plaintiff's timesheet shows she worked 102.50 hours total."). These timesheets raise a genuine issue of material fact as to whether Plaintiff is entitled to overtime compensation. Therefore, summary judgment on Plaintiff's FLSA overtime claim is not appropriate.

b. <u>Minimum Wage</u>

The FLSA sets the minimum wage to not less than $7.25 per hour. 29 U.S.C. § 206(a). To claim improper compensation under the FLSA, the Plaintiff must allege that the wages fell below the statutory minimum in a given workweek. *Id.*; 29 C.F.R. § 776.4; *Douglas v. Xerox Business Services, LLC*, 875 F.3d 884, 890 (9th Cir. 2017).

As to the Sunday hours, Defendants asserts Plaintiff was not scheduled to work on Sundays, did not clock in, and did not tell anyone she was working. ECF No. 58 at 16. Plaintiff does not offer any facts or argument in opposition to this claim. There is no evidence that the alleged unpaid hours, when averaged with the paid hours in a given workweek, resulted in payment less than the federal minimum wage. 29 U.S.C. § 206(a); *Adair v. City of Kirkland*, 185 F.3d 1055,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 14

1062 n.6 (9th Cir. 1999) ("[E]ven though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked."). Therefore, summary judgment on Plaintiff's FLSA minimum wage violation is appropriate.

### 4.  Federal and State EPA

The EPA is an amendment to the FLSA that was created to ensure that "equal work will be rewarded by equal wages." *Rizo v. Yovino*, 950 F.3d 1217, 1222 (9th Cir.), *cert. denied*, 141 S. Ct. 189 (2020) (internal quotation and citation omitted). The EPA, by way of the FLSA, prohibits discrimination. *See* 29 U.S.C. § 215(a)(2)-(3). Regarding sex discrimination, the EPA provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. . . .

29 U.S.C. § 206(d)(1).

The plaintiff bears the burden of establishing a *prima facie* case of discrimination that employees of different sex were paid different wages for equal work. *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073-74 (9th Cir. 1999). The plaintiff must demonstrate that the compared jobs – not the individuals – are

1   "substantially equal." *Stanley*, 178 F.3d at 1074.  Under the "substantially equal"

2   analysis, the court looks to: (1) whether the jobs share a common core of tasks; and

3   (2) whether the additional tasks make the jobs substantially different.  *Id.*

4      If the plaintiff can establish a *prima facie* case, the defendant can show

5   "such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a

6   system which measures earnings by quantity or quality of production; or (iv) a

7   differential based on any other factor other than sex" to operate as an affirmative

8   defense.  29 U.S.C. § 206(d)(1); *Rizo v. Yovino*, 950 F.3d at 1222.  The inquiry

9   ends there: Plaintiff is not required to show pretext because EPA cases do not

10  follow the burden-shifting framework set out in *McDonnell Douglas*.  *Rizo*, 950

11  F.3d at 1223.

12     Washington's EPA parallels its federal counterpart.  *Adams v. Univ. of*

13  *Washington*, 106 Wash. 2d 312, 317 (1986).  As a result, decisions interpreting the

14  federal act may be helpful.  *Hudon v. W. Valley Sch. Dist. No. 208*, 123 Wash.

15  App. 116, 124 (2004).  Washington's EPA assures that people receive equal pay

16  for equal work.  *Id.*  Employees are equally employed if "the individuals work for

17  the same employer, the performance of the job requires similar skill, effort, and

18  responsibility, and the jobs are performed under similar working conditions."

19  RCW 49.58.020(2).

20

1    Plaintiff asserts male employees were paid more for the same job

2    immediately prior to and after Plaintiff's employment.  *See* ECF No. 70 at 8, ¶ 39.

3    Plaintiff originally contended that employee Thomas McCaslin replaced her, but

4    Defendants assert that he was hired as a housekeeper and porter.  Plaintiff disputes

5    this to the extent that Mr. McCaslin "eventually was making $20 an hour for the

6    maintenance position."  ECF No. 70 at 9, ¶ 48.   Viewing the facts in light most

7    favorable to Plaintiff, the Court finds that Mr. McCaslin was not in a substantially

8    equal position as Plaintiff as he performed both housekeeper and porter roles

9    compared to Plaintiff's maintenance role.

10    Plaintiff also asserts that another employee, Tristan Blakely, was her

11    maintenance replacement who was male, 20 years younger, and hired at a higher

12    wage than Plaintiff.  ECF No. 69 at 4, ¶ 19.  Defendants oppose the Mr. Blakely's

13    records as wrongfully obtained outside of the discovery process.  ECF No. 84.

14    Defendants also assert Mr. Blakely had more qualifications than Plaintiff as a

15    certified electrician and experience with HVACs and DC/ACs, and was hired on at

16    $15 per hour as compared to Plaintiff's $14.95 per hour.  ECF No. 84 at 9.  Even

17    where Plaintiff establishes a prima facie case with Mr. Blakely performing a

18    substantially similar role, Defendants provided an affirmative defense that the five

19    cent differential was based on a factor other than sex, i.e., based on Mr. Blakely's

20    experience and credentials.  29 U.S.C. § 206(d)(1).  Viewing the facts in light most

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 17

favorable to Plaintiff, no rational jury could find other than Defendants' proffered reasons explains the wage disparity.  Therefore, summary judgment on Plaintiff's federal and state EPA claims is appropriate.

### 5. False Claims Act

Defendants move for summary judgment on Plaintiff's False Claims Act claim.  ECF No. 58 at 17.

The False Claims Act ("FCA") prohibits anyone from knowingly submitting false claims to the federal government or knowingly causing another to submit such false claims.  31 U.S.C. § 3729(a)(1)(A).  A plaintiff must demonstrate (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir 2017).

Defendants assert they have not provided the federal government any information regarding Plaintiff, other than tax information.  ECF No. 58 at 17.  In response, Plaintiff asserts "Sawyer purposely gave false information to a [state] government agency that had detrimental effects on Plaintiff's ability to get unemployment."  ECF No. 69 at 17.  Viewing the facts in light most favorable to Plaintiff, there are no facts in the record that show a statement was made to the United States nor that the United States paid out money due in reliance on any statement.  Therefore, summary judgment on this claim is appropriate.

1    *6. Title VIII*

2    Defendants move for summary judgment on Plaintiff's Title VIII Fair

3    Housing Act claim.  ECF No. 58 at 17-18.

4    The Fair Housing Act ("FHA") protects individuals from discrimination

5    based on race, color, national origin, religion, sex, sexual orientation, familial

6    status, and disability when seeking housing.  42 U.SC. §3604.  Courts apply Title

7    VII's analysis to FHA claims.  *Budnick v. Town of Carefree*, 518 F.3d 1109, 1113-

8    14 (9th Cir. 2008).  The plaintiff must show (1) her rights are protected under the

9    FHA and (2) she suffered a distinct and palpable injury as a result of the

10   defendant's discriminatory conduct.  *Harris*, 183 F.3d at 1051.  Discriminatory

11   intent or motive is a necessary element of an FHA disparate treatment claim.

12   *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).

13   Here, there are no material facts in dispute as to whether Plaintiff was

14   evicted from the General Manager's suite based on a protected characteristic or

15   that Plaintiff was entitled to stay in the General Manager suite.  Defendants assert

16   an employee from Hometowne Studios' corporate headquarters told Plaintiff, who

17   was not the General Manager, she was not allowed to stay for free in the General

18   Manager's suite while Mr. Sawyer was at training.  ECF No. 58 at 18.  Plaintiff

19   does not substantively challenge or otherwise offer any facts to dispute this.  ECF

20   No. 69 at 17-18.  Here, there is no issue of material fact as to whether the eviction

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 19

was taken based on a protected characteristic such as sex or religion.  Therefore,

summary judgment on this claim is appropriate.

### 7.  *WLAD*

Plaintiff asserts a Washington Law Against Discrimination claim in her

Third Amended Complaint.  ECF No. 41.  Because Defendants do not move for

summary judgment on this claim, the Court does not address it.

### III.  **Motion for Sanctions**

Defendants filed a motion for sanctions or for second order to compel.  ECF

No. 75.  Plaintiff filed an untimely response.  ECF No. 90.  Defendants move to

strike the untimely response.  ECF No. 94.

As an initial matter, the Court overrules Defendants' objection under Rule

408 as Plaintiff does not seek to admit evidence of settlement negotiations to prove

or disprove the validity or amount of a disputed claim or to impeach by a prior

inconsistent statement or contradiction.  Fed. R. Evid. 408.  In any event, it is not

clear why Plaintiff included this information in her response to a motion for

sanctions and the Court disregards it as irrelevant.

The Court may sanction a party's failure to obey a discovery order with any

just order, including prohibiting the disobedient party from supporting or opposing

designated claims or defenses, or for introducing designated matters in evidence.

Fed. R. Civ. P. 37(b)(2).  In assessing sanctions, courts look to (1) the public's

interest in expeditious resolution of litigation, (2) the Court's need to manage its

docket, (3) the risk of prejudice to Defendants, (4) the public policy favoring

disposition of cases on the merits, and (5) the availability of less drastic sanctions.

*Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

On August 9, 2022, the Court granted in part Defendants' motion to compel

and ordered Plaintiff to respond to outstanding interrogatories and requests for

production to the best of her ability no later than August 31, 2022.  ECF No. 68 at

3.  On September 1, 2022, Defendants filed the motion for sanction for Plaintiff's

violation of the court's order or for second order to compel Plaintiff's compliance

with discovery.  ECF No. 75.  Specifically, Defendants seek dismissal for

Plaintiff's cherry-picking what discovery she produces and failure to fully respond

to the second set of discovery.  *Id.*

Here, it is clear there is outstanding discovery and that Plaintiff has been

selective in what discovery she produces.  While there is a risk of prejudice to

Defendants, the Court notes the public policy in favor of deciding the case on the

merits especially where there is the availability of less drastic sanctions compared

to Defendants' requested dismissal.  Because discovery has closed, the Court

prohibits Plaintiff from introducing matters into evidence for which she did not

produce in discovery.  Moreover, the Court orders the parties bear their own costs

and fees where Plaintiff is proceeding *pro se* and *in forma pauperis*, participating

in litigation, and communicating with Defendants to make an award of expenses

unjust.  Fed. R. Civ. P. 37(b)(2)(C).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 58) is **GRANTED in part** and **DENIED in part**.

2. Defendants' Motion for Sanctions or for Second Order to Compel (ECF No. 75) is **GRANTED in part** and **DENIED in part**.

3. Defendants' Motion to Expedite Motion to Strike Untimely Response (ECF No. 92) is **DENIED as moot**.

4. Defendants' Motion to Strike Response to Motion (ECF No. 94) is **DENIED**.

5. Each party to bear their own costs and fees.

The District Court Executive is directed to enter this Order and forward

copies to the parties.

DATED October 18, 2022.

THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 22